UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| OSCAR HERNANDEZ,<br><br>    Plaintiff<br><br>v.<br><br>THE HOME DEPOT, INC. and RIDGE TOOL COMPANY,<br><br>    Defendants | Case No.: 2:22-cv-00938-APG-EJY<br><br>**Order Certifying Question to<br>the Supreme Court of Nevada** |

I respectfully certify to the Supreme Court of Nevada the following question of law that may be determinative as to part of a case before me and as to which there is no clearly controlling precedent in the decisions of the Supreme Court of Nevada or the Nevada Court of Appeals:

- Does Nevada impose strict products liability on an entity whose only involvement with a defective or unreasonably dangerous product is to license its trademark to be used to market the product and where the product and packaging prominently display its trademark?

**I. STATEMENT OF ALL FACTS RELEVANT TO THE CERTIFIED QUESTION**

Oscar Hernandez alleges that he was injured while using a "RIDGID" branded nail gun while on a construction site. Hernadez's employer allegedly purchased the nail gun from The Home Depot. The nail gun and its packaging both prominently bore the RIDGID name and trademark. The RIDGID brand is known throughout the professional trades for its hallmark characteristics of dependable and reliable performance.

In 2003, Ridge Tool Company or its affiliated companies licensed the RIDGID trademark to The Home Depot. Under that licensing agreement, The Home Depot used the RIDGID

trademark to market and retail a line of power tools, including the nail gun Hernandez used. That line of power tools was designed and manufactured by other companies for, and on behalf of, The Home Depot, not by Ridge Tool Company or its affiliated companies. Ridge Tool Company and its affiliated companies were not involved with the design, manufacture, distribution, or sale of the nail gun, nor with the formulation of its warnings. Their only involvement with regard to the nail gun is that they licensed the RIDGID trademark to The Home Depot.

## II. NATURE OF THE CONTROVERSY IN WHICH THE QUESTION AROSE

Hernandez sues The Home Depot, Inc. and Ridge Tool Company under theories of (1) strict liability, (2) negligence, (3) breach of express warranty, and (4) breach of implied warranty of fitness. The defendants moved for partial summary judgment as to Ridge Tool Company, arguing that it played no role in the design, manufacture, distribution, or sale of the nail gun, or in the formulation of its warnings, other than to license the RIDGID trademark to The Home Depot. They did not move for summary judgment as to The Home Depot. I granted summary judgment in Ridge Tool Company's favor for the negligence, breach of express warranty, and breach of implied warranty claims.

Hernandez contends that Ridge Tool Company is strictly liable under the apparent manufacturer doctrine, which imposes liability on an entity that appears to make a product but does not actually manufacture it, as restated by § 400 of the Restatement (Second) of Torts. In addition, he argues that, under the stream of commerce approach, strict liability should be imposed on any entity that takes part in the production or marketing of a defective product. Ridge Tool Company contends that § 400 is inapplicable here because it is limited to sellers of the product. Alternatively, it relies on § 14 of the Restatement (Third) of Torts to contend that

the trend in applying the apparent manufacturer doctrine is to absolve the trademark licensor of strict products liability claims unless the licensor participates substantially in the design, manufacture, or distribution of the licensee's products.  Relatedly, Ridge Tool Company contends that trademark licensors found strictly liable in the cases cited by Hernandez were much more involved in the product's development than in the present case.

I could not find, nor did parties cite to, any Nevada law applying or rejecting the apparent manufacturer doctrine or the stream of commerce approach.  The Supreme Court of Nevada should decide the scope of Nevada's strict products liability law, because that decision will have important public policy implications.  So I denied summary judgment as to the strict liability claim without prejudice to refiling it, and I certify the question to the Supreme Court of Nevada.

## III. NO CLEARLY CONTROLLING PRECEDENT IN NEVADA LAW

I have found no clearly controlling precedent on the certified question.  The only Nevada case about the liability of a trademark licensor for a defective product is *Dow Chemical Co. v. Mahlum*, but it does not clearly address the question of strict liability. 970 P.2d 98 (Nev. 1998), *overruled in part on other grounds by GES, Inc v. Corbitt*, 21 P.3d 11 (Nev. 2001).  In *Dow Chemical*, the plaintiff was injured by defective silicone breast implants manufactured by Dow Corning, a company created and owned in part by Dow Chemical. *Id.* at 103, 106.  The plaintiff sued Dow Chemical for negligent performance of an undertaking based on the theory that it undertook the safety testing of the silicone compounds. *Id.* at 106-07.  In addition to testing the silicone compounds and providing other technical support, Dow Chemical also licensed the "Dow" trademark to Dow Corning. *Id.* at 114, 117.

In deciding *Dow Chemical*, the Supreme Court of Nevada stated that the "language in the trademark [licensing] agreement, by itself, is not sufficient to create tort liability" for the licensor

3

Dow Chemical but that the agreement's "existence is one factor in assessing [the licensor's] knowledge and involvement" in the manufacture of the defective product. *Id.* at 117 (quotation omitted).[1]  Because it was stated in the context of a negligent performance of an undertaking claim, it seems apt to understand the phrase "not sufficient to create tort liability" as limiting only the negligence liability, not the strict liability, of a trademark licensor.  Therefore, it is not clear that *Dow Chemical* would apply to the strict liability issue in the present case.

      Nevada's jurisprudence on strict products liability also does not clearly answer the certified question.  In Nevada, manufacturers and distributors are strictly liable for defective products. *See Ginnis v. Mapes Hotel Corp.*, 470 P.2d 135, 138 (Nev. 1970); *Shoshone Coca-Cola Bottling Co. v. Dolinski*, 420 P.2d 855, 857 (Nev. 1966).  However, it is not clear that *only* those entities are strictly liable, because Nevada's stated public policy regarding strict products liability appears aligned with the stream of commerce approach as adopted by California, Illinois, and Arizona. *See Shoshone*, 420 P.2d at 857.  These states have used the stream of commerce approach to impose liability on trademark licensors that did not sell or manufacture the defective product but participated in, to different degrees, putting the defective products into the stream of commerce. *See, e.g., Kasel v. Remington Arms Co.*, 24 Cal. App. 3d 711, 725-27 (Cal. Ct. App. 1972); *Connelly v. Uniroyal, Inc.*, 389 N.E.2d 155, 161 (Ill. 1979); *Torres v. Goodyear Tire & Rubber Co.*, 786 P.2d 939, 942 (Ariz. 1990).  The Supreme Court of Arizona stopped short of addressing the precise question here, noting that if a defendant "merely licenses

---

[1] Justice Maupin expounded on this issue in a partial dissent in *Dow Chemical*. 970 P.2d at 132. He stated that the language in the trademark licensing agreement is merely required to retain the licensor's ownership of trademark rights, and that there was no evidence Dow Chemical actually inspected the breast implants, so the licensing agreement could not impose a duty to inspect the trademarked product nor constitute an undertaking to guarantee the safety of the product. *Id.* at 136-37.  However, Justice Maupin's dissent did not discuss the significance of the trademark agreement in the context of strict liability. *See id.*

4

a manufacturer to use a particular . . . trademark . . . it might well be inappropriate to impose strict liability," but this was "not an issue [it] need[ed] to decide" because the defendant in that case was significantly involved in creating the product. *Torres*, 786 P.2d at 945.

Even if Nevada were to follow California, Illinois, and Arizona in extending strict liability beyond actual sellers and manufacturers under the stream of commerce approach, it is unclear what additional conduct, if any, a trademark licensor would need to engage in to be considered as participating in the stream of commerce. Therefore, I certify the question of strict liability to the Supreme Court of Nevada.

## III. PARTIES' NAMES AND DESIGNATION OF APPELLANT AND RESPONDENTS

Plaintiff: Oscar Hernandez

Defendants: The Home Depot, Inc. and Ridge Tool Company

The defendants argue that they are entitled to summary judgment as to Ridge Tool Company because strict liability does not apply to a mere trademark licensor, so I designate the defendants as respondents and the plaintiff as appellant.

## IV. NAMES AND ADDRESSES OF COUNSEL FOR THE PARTIES

Counsel for the plaintiff/appellant:

>David F. Sampson
>Law Office of David Sampson, LLC
>630 South 3rd Street
>Las Vegas, NV 89101

Counsel for the defendants/respondents:

>Ellen Bowman
>Wilson Elser Moskowitz Edelman & Dicker LLP
>300 South 4th Street, 11th Floor
>Las Vegas, NV 89101

Rosario M Vignali
Wilson Elser Moskowitz Edelman & Dicker
3 Gannett Drive
White Plains, NY 10604

## IV. ANY OTHER MATTERS THE CERTIFYING COURT DEEMS RELEVANT TO A DETERMINATION OF THE QUESTION CERTIFIED

The clerk of court will forward my order on the defendants' motion for partial summary judgment (filed concurrently herewith) as it contains additional analysis and references to the evidence underlying the facts of the case.  I defer to the Supreme Court of Nevada to decide whether it requires any other information to answer the certified question.  I do not intend my framing of the question to limit the Supreme Court of Nevada's consideration of the issues.

## VI. CONCLUSION

I THEREFORE ORDER the clerk of court to forward this order and my order on partial summary judgment under official seal to the Supreme Court of the State of Nevada, 201 South Carson Street, Suite 201, Carson City, Nevada 89701-4702.

DATED this 18th day of December, 2023.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE